# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 20, 2022

Lyle W. Cayce
Clerk

No. 21-30478

Coleman E. Adler & Sons, L.L.C.; Royal Cloud Nine, L.L.C.; Latrobe's on Royal, L.L.C.,

*Plaintiffs—Appellants*,

*versus*

Axis Surplus Insurance Company, *incorrectly named Axis Surplus Lines Insurance Company*; Risk Placement Services, Incorporated; Unidentified Parties; Marsh & McLennan Agency, L.L.C.,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:21-CV-648

Before Smith, Duncan, and Oldham, *Circuit Judges*.
Stuart Kyle Duncan, *Circuit judge*:

During the covid-19 pandemic, state and local authorities in Louisiana ordered nonessential businesses to close for a time. This required Coleman E. Adler II to temporarily shut his jewelry stores and event spaces in New Orleans. To recoup income lost during the closure, Adler claimed reimbursement under his insurance policy's coverage for "direct physical loss of or damage to" his property. Adler's insurer, Axis, denied the claim.

No. 21-30478

Adler sued Axis along with his insurance agent and broker. The district court dismissed Adler's claims, concluding that Adler suffered no covered loss or damages and that his agent and broker violated no duty to advise Adler about pandemic-related coverage. We affirm.

I.

Adler owns and operates jewelry stores and reception venues in New Orleans.[1] In March 2020, responding to the covid-19 pandemic, government orders closed Adler's businesses as nonessential. Adler sought business-interruption coverage under a commercial property insurance policy. The policy covers "direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss." Adler's insurer, Axis Surplus Insurance Company ("Axis"), denied the claim.

Adler then brought a state court lawsuit against (1) Axis; (2) Adler's insurance agent, Marsh & McLennan Agency LLC ("Marsh"); and (3) Adler's wholesale broker, Risk Placement Services, Inc. ("RPS").[2] Adler pleaded negligence, breach of contract, and bad faith. He claimed the businesses were "damaged" under the policy because the coronavirus was present in them and "the rampant spread of Covid-19 . . . create[d] a dangerous property condition" that prevented use of the property. Adler also claimed Marsh and RPS were liable for not having recommended pandemic coverage.

Marsh removed the case to federal court, joined by the other defendants. All three separately moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The district court granted

---

[1] The businesses are Coleman E. Adler & Sons, L.L.C.; Royal Cloud Nine, L.L.C; and Latrobe's on Royal, L.L.C. We refer to them collectively as "Adler."

[2] Marsh had procured the policy for Adler and RPS facilitated the transaction.

the motions and dismissed Adler's complaint with prejudice. Adler timely appealed.

## II.

We review a dismissal for failure to state a claim *de novo*. *IberiaBank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020). To survive a motion to dismiss, the plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Interpretation of an insurance policy is a question of law that we also review *de novo*. *Naquin v. Elevating Boats, L.L.C.*, 17 F.3d 235, 238 (5th Cir. 2016). "Under Louisiana law, an insurance policy is a contract that must be construed using the general rules of contract interpretation set forth in the Civil Code." *Anco Insulations, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 787 F.3d 276, 281 (5th Cir. 2015) (footnote omitted). Dismissal is proper if an insurance contract precludes recovery. *IberiaBank*, 953 F.3d at 346.

## III.

We first examine Adler's claim that Axis wrongly denied coverage for "direct physical loss of or damage to property." The district court found Adler provided no evidence that his properties suffered any such loss or damage. We agree with the district court.

"Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning." *Edwards v. Daugherty*, 2003-2103, at *11 (La. 10/1/04); 883 So. 2d 932, 940–41; *see also* LA. CIV. CODE art. 2045–47. "When the words of an insurance contract are clear and unambiguous and lead to no absurd consequences, courts must enforce the contract as written and may make no further interpretation in

search of the parties' intent." *Gorman v. City of Opelousas*, 2013-1734, at \*5 (La. 7/1/14); 148 So. 3d 888, 892. Where, as here, the Louisiana Supreme Court has yet to interpret the policy language at issue, we make an "*Erie* guess" as to how that court would read it. *See Erie R.R. v. Tompkins*, 304 U.S. 64 (1938); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345–46 (5th Cir. 2008).

This is a guess we have already made. In *Q Clothier*, our court recently interpreted a Louisiana insurance policy's coverage for "direct physical loss of or damage to property" to "cover only *tangible* alterations of, injuries to, and deprivations of property." *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 253, 257 (5th Cir. 2022) (emphasis added). While recognizing that the Louisiana Supreme Court had not yet construed this contract language, we based our *Erie* guess in part on several Louisiana intermediate appellate decisions.[3] Accordingly, we held that the clause did not apply to a retailer's claim for losses caused by pandemic closure orders. *Id.* at 259. Loss of income from such orders was not a "tangible" loss of property, "[n]or [wa]s it an alteration, injury, or deprivation of *property*." *Id.* at 259. The retailer's "property," we explained, "ha[d] been unchanged by the orders or the close of its stores," and so losses of income caused by the orders were not covered by the policy. *Ibid.*

---

[3] *See Mangerchine v. Reaves*, 2010-1052, p. 10–11 (La. App. 1 Cir. 3/25/11); 63 So. 3d 1049, 1056 (interpreting "loss" in a homeowner's insurance policy to mean "destruction, ruin, or deprivation"); *Widder v. La. Citizens Prop. Ins. Corp.*, 2011-0196, p. 3–4 (La. App. 4 Cir. 8/10/11); 82 So. 3d 294, 296, *writ denied*, 2011-2336 (La. 12/2/11); 76 So. 3d 1179 (holding lead contamination that rendered property uninhabitable until gutted and remediated constituted a "direct physical loss"); *Ross C. Adams Const. & Design, L.L.C.*, 10-852, p. 6 (La. App. 5 Cir. 6/14/11); 70 So. 3d 949, 952 (defective drywall resulted in direct physical loss because drywall had to be removed and replaced).

No. 21-30478

Adler argues we are not bound by *Q Clothier* because, since that decision, one Louisiana appeals court has reached a different conclusion. In *Cajun Conti, LLC et al. v. Certain Underwriters at Lloyd's, London et al.*, 21-0343, 2022 WL 2154863, p. 5 (La. App. 4 Cir. 6/15/22), *reh'g granted for clarification only*, 21-0343 (La. App. 4 Cir. 8/8/22), the Louisiana Fourth Circuit held that similar policy language covered a restaurant's losses resulting from pandemic closure orders. Adler is mistaken. Our court's rule of orderliness applies to *Erie* cases no less than cases interpreting federal law. *See F.D.I.C. v. Abraham*, 137 F.3d 264, 268–69 (5th Cir. 1998) ("Adherence to th[e] rule [of orderliness] is no less immutable when the matter determined by the prior panel is the interpretation of state law[.]") (citing *Broussard v. S. Pac. Transp. Co.*, 665 F.2d 1387, 1389 (5th Cir. 1982) (en banc)).[4]

No exception to the rule of orderliness applies here. Since *Q Clothier*, there has been "neither a clearly contrary subsequent holding of the highest court of [Louisiana] nor a subsequent statutory authority, squarely on point." *Id.* at 269. Nor has there been contrary intervening precedent that "comprises unanimous or near-unanimous holdings from several— preferably a majority—of the intermediate appellate courts of [Louisiana]." *Ibid.* We have only one subsequent decision from an intermediate state court, and that cannot overcome our rule of orderliness. *Ibid.*; *see also Dickie Brennan & Co., L.L.C. v. Zurich Am. Ins. Co.*, No. 21-30776, 2022 WL 3031303, at *2 n.1 (5th Cir. Aug. 1, 2022) (unpublished) (panel was bound by

---

[4] *See also, e.g.*, *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 462–63 (5th Cir. 2010) (explaining that, in *Erie* cases, "[w]e . . . apply panel precedent 'absent a subsequent state court decision or statutory amendment which makes [the panel decision] clearly wrong'") (quoting *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 425 (5th Cir. 2001)); *Ford v. Cimmaron Ins. Co., Inc.*, 230 F.3d 828, 832 (5th Cir. 2000) (explaining that "a prior panel's interpretation of state law has binding precedential effect on other panels of this court absent a subsequent state court decision or amendment rendering our prior decision clearly wrong") (citing *Abraham*, 137 F.3d at 269).

*Q Clothier* despite *Cajun Conti* because "the issuance of an intermediate appellate court decision does not alter our duty to apply the rule of orderliness").

Accordingly, *Q Clothier* binds this panel and forecloses Adler's arguments. Like the *Q Clothier* plaintiff, Adler strains to equate its pandemic losses to the property losses in Chinese drywall cases. *See Q Clothier*, 29 F.4th at 259; *see also, e.g.*, *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 759 F.Supp. 2d 822, 831–32 (E.D. La. 2010). Adler contends that, like drywall-related losses, his losses were caused by the "the presence of . . . coronavirus particles" and infected persons, rendering its property unusable. *Q Clothier* rejected that argument. Unlike losses arising from pandemic closure orders, drywall losses arose because the defective drywall emitted sulfur gases, making the property "unusable or uninhabitable" until the drywall was "removed and replaced in the property." *Q Clothier*, 29 F.4th at 259. Not so here. Adler has not alleged that the coronavirus physically damaged or contaminated his property such that it needed to be repaired or replaced. "COVID-19 itself did not make [Adler's] stores inherently dangerous or uninhabitable like the drywall." *Id.* at 260. To the contrary, what denied Adler use of his property was the government's closure orders. Such losses do not involve a "tangible alteration to, injury to, or deprivation of property." *Id.* at 260. The district court therefore correctly dismissed Adler's claims against Axis.[5]

## IV.

We next examine Adler's claims that RPS and Marsh are liable for breach of contract, breach of fiduciary duty, and negligence. These claims are

---

[5] Adler's motion to certify this question to the Louisiana Supreme Court, which the panel carried with the case, is DENIED.

No. 21-30478

based on those defendants' alleged failures to (1) advise Adler about pandemic-related coverage, (2) perform due diligence regarding Adler's need for such coverage, and (3) recommend appropriate coverage. The district court dismissed these claims, concluding neither RPS nor Marsh owed Adler any "heightened" duty to advise him about the need to obtain pandemic-related coverage. We again agree with the district court.

To recover under Louisiana law for an agent's failure to obtain insurance coverage, a plaintiff must show "(1) an undertaking or agreement by the insurance agency to procure insurance; (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; and (3) actions by the agent warranting the client's assumption that the client was properly insured." *Offshore Prod. Contractors, Inc. v. Republic Underwriters Ins. Co.*, 910 F.2d 224, 229 (5th Cir. 1990) (citations omitted) [hereinafter, "*OPC*"].[6] In Louisiana, an insurance agent "owes a duty of 'reasonable diligence' to his customer," which is "fulfilled when the agent procures the insurance requested." *Isidore Newman Sch. v. J. Everett Eaves, Inc.*, 2009-2161, p. 7 (La. 7/6/10); 42 So. 3d 352, 356 (citing *Roger v. Dufrene*, 613 So.2d 947, 949 (La. 1993); *Karam*, 281 So.2d at 730–31)). The agent's duty, however, "has not been expanded to include the obligation to advise whether the client has procured the correct amount or type of insurance coverage." *Id.* at 359. To the contrary, "[i]t is the *insured's* responsibility to request the type of insurance coverage . . . needed," and "[i]t is not the agent's obligation to spontaneously or affirmatively identify the scope or the amount of insurance coverage the client needs." *Ibid.* (emphasis added).

---

[6] *See also, e.g.*, *Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So.2d 728, 730–31 (La. 1973) (stating similar analysis); *Dahan Novelties & Co., L.L.C. v. Ohio Cas. Ins. Co.*, 2010-0626, p. 5 (La. App. 4 Cir. 10/20/10); 51 So.3d 129, 133–34 (same).

Adler failed to plausibly allege that Marsh or RPS owed any duty to advise him about pandemic-related coverage. *Ibid.* Adler does not allege he "specifically inquired" about such coverage, *id.* at 358 (citation omitted), and it is settled under Louisiana law that neither Marsh nor RPS had the "obligation to spontaneously or affirmatively identify the *scope* . . . of insurance coverage [Adler] need[ed]." *Id.* at 359 (emphasis added). As the Louisiana Supreme Court has explained, "the only duty imposed on the [insurance] agent is to obtain the coverage requested by the customer." *Id.* at 357 (discussing *Graves v. State Harm Mut. Auto Ins. Co.*, 01-1243 (La. App. 3 Cir. 6/26/02); 821 So.2d 769). Adler never inquired about or asked for pandemic-related coverage from Marsh or RPS, and that defeats his claims against those defendants.

Adler nonetheless argues Marsh and RPS have a "heightened duty" to Adler based on two kinds of allegations. First, they allege Adler has a "close relationship" with Marsh and RPS, in that they "speak about coverage regularly" and offer Adler "advice about coverage." Second, Adler points to Marsh's website, which holds out Marsh as an "expert" in advising the "hospitality industry" about "insurance coverage." Adler is mistaken.

To begin with, Adler cites no opinion from our court or the Louisiana Supreme Court establishing that insurance agents or brokers have a "heightened duty" under certain circumstances to advise customers about specific kinds of insurance coverage. (Adler relies only on a federal district court decision that, as explained below, we disagree with). The district court suggested, however, that our decision in *OPC* held a "heightened duty" may exist based on "the agent's representations of his services and the relationship and agreements between the agent and his client." *See generally OPC*, 910 F.2d at 224. We disagree that *OPC* stands for that broad proposition, and we take the opportunity to clarify that decision in light of controlling Louisiana law.

No. 21-30478

In that case, OPC, a maritime construction company, needed builder's risk insurance to construct a pipeline. *Id.* at 226. OPC told its insurance agent about its specific insurance needs—namely, coverage in the event that weather damaged OPC's equipment and interrupted its work. *Id.* at 227. The agent recommended "stand-by insurance" but, crucially, neglected to explain to OPC that such coverage *excluded* "weather-related down-time." *Ibid.* OPC sued the agent under Louisiana law and prevailed. As we explained, the agent breached its duty to OPC because the agent was "aware of the risks against which OPC wanted insurance"—even "suggest[ing] that OPC could get stand-by insurance to cover [weather-related] down-time"—and because "OPC never would have purchased stand-by insurance if it had known that the policy excluded weather down-time." *Id.* at 230. We summarized our holding this way: "[w]here an agent is familiar with the insured's business, has reason to know the risks against which an insured wants protection, and has experience with the types of coverage available in a particular market, we must construe an undertaking to procure insurance as an agreement by the agent to provide coverage for the client's specific concerns." *Ibid.* (citations omitted).

*OPC* does not stand for the broad and murky proposition that a client's "close relationship" with an insurance agent or broker creates a "heightened duty" to anticipate the client's insurance needs or recommend specific coverage. *OPC*'s facts are far narrower: OPC told its insurance agent about its specific coverage needs, but the agent procured a policy that excluded the exact coverage OPC wanted. In other words, the agent breached its fiduciary duty by negligently failing to obtain the coverage requested by its client. *See ibid.* (observing the agent "undertook to procure stand-by

insurance for OPC which would provide some coverage for down-time due to weather in the Gulf," but "did not act diligently to place the insurance").[7]

A subsequent Louisiana Supreme Court decision confirms this is the correct way to read *OPC*. In *Isidore Newman School v. J. Everett Eaves, Inc.*, a private school suffered over $3 million in tuition losses when Hurricane Katrina closed it for two months. 42 So. 3d at 354. The school sued its longtime insurance broker, alleging the broker failed to advise the school that its property insurance covered tuition (and not merely property damage) and that the coverage amount ($350,000) was too low to cover tuition losses. *Ibid.* The Louisiana Supreme Court ruled unanimously for the broker. Surveying Louisiana law, the court reiterated the established proposition that "an insurance agent owes a duty of 'reasonable diligence' to its customer," which "is fulfilled when the agent procures the insurance requested." *Id.* at 356 (citing *Karam*, 281 So.2d at 730–31; *Roger*, 613 So.2d at 949). At the same time, though, the court rejected the idea that the broker had a duty to explain the stated coverage in its client's policy or to advise the client it was underinsured. *Id.* at 358. The court's conclusion is worth quoting at length:

> An agent has a duty of "reasonable diligence" to advise the client, but this duty has not been expanded to include the obligation to advise whether the client has procured the correct amount or type of insurance coverage. It is the insured's responsibility to request the type of insurance coverage, and the amount of coverage needed. It is not the agent's obligation to spontaneously or affirmatively identify the scope or the amount of insurance coverage the client needs. It is also well

---

[7] *See also id.* at 231 ("Louisiana law does not require [an agent] to discuss every situation which might arise…. However, the law does require [an agent] to inform a client when the policy which he procured does not cover *a specific risk about which the client expressed concern*.") (emphasis added); *id.* at 234 ("[The agent] failed to procure insurance *requested by OPC* which would protect OPC against this loss.") (emphasis added).

settled that it is insured's obligation to read the policy when received, since the insured is deemed to know the policy contents.

*Id.* at 359; *see also, e.g.*, *Mandina, Inc. v. O'Brien*, 2012-0085, p. 14 (La. App. 4 Cir. 7/31/13); 156 So.3d 99, 107 (observing "an agent has no duty to independently assess the needs of the insured and recommend coverage") (quoting *Newman*, 42 So.3d at 356–57).[8]

Adler relies on a federal district court decision to support his "heightened duty" argument, but that decision misreads *OPC*. In *VCS, LLC v. Mt. Hawley Ins. Co.*, 534 F. Supp. 3d 635 (E.D. La. 2021), the district court reasoned that, even after *Isidore Newman*, our *OPC* decision "may still apply when an agent has reason to know that the client had a specific risk or requested coverage for specific circumstances." *Id.* at 650 (citations omitted). Based on that reading of *OPC*, the court held a Louisiana insurer may owe a "heightened duty" to "advise [a client] regarding virus-related coverage" because the insurer held itself out on its website as an "advisor[] of hotel business income insurance." *Id.* at 651.

We disagree with the *VCS* district court's reading of *OPC*. As discussed, *OPC* does not support the notion that insurers may assume a "heightened duty" to recommend specific coverage to their clients. If there were any doubt about that, *Isidore Newman* laid it to rest. To be sure, *Isidore Newman* recognizes an agent's well-established duty of "reasonable diligence" to fulfill a client's insurance requests, but it says nothing about an agent's "heightened duty" whenever he has "reason to know" of a client's "specific risk." To the contrary, *Isidore Newman* held that the agent and

---

[8] Although we disagree with the district court's suggestion that *OPC* recognizes a heightened duty in some circumstances, we agree with the court's ultimate conclusion that *OPC* must be read in light of the subsequent decision in *Isidore Newman*.

broker have no "obligation to advise whether the client has procured the correct amount or type of insurance coverage" nor "to spontaneously or affirmatively identify the scope or the amount of insurance coverage the client needs." 42 So. 3d at 359. Rather, "[i]t is the insured's responsibility to request the type of insurance coverage, and the amount of coverage needed." *Ibid.* Finally, neither *OPC* nor *Isidore Newman* supports the *VCS* court's specific holding—namely, that an agent assumes a duty to advise clients about pandemic-related coverage merely by holding itself out on its website as having expertise in "hotel business income insurance." *See VCS*, 534 F. Supp. 3d at 651. No Louisiana decision supports that.[9]

In sum, contrary to Adler's arguments, what creates a Louisiana insurance agent's duty to procure particular coverage is not a "close relationship" with the insured but an insured's "specific[]" request for "the type of insurance coverage . . . needed." *Isidore Newman*, 42 So. 3d at 358, 359. As explained, Adler did not allege he specifically requested pandemic-related coverage from either RPS or Marsh. Adler's claims against those defendants were properly dismissed.

## IV.

The district court's judgment is AFFIRMED.

---

[9] Adler also cites the district court's decision in *Sika Investments, L.L.C. v. RLI Corp.*, 2021 WL 2134697 (E.D. La. May 26, 2021). But *Sika* relies on *VCS*'s erroneous reading of *Isidore Newman* and *OPS*. *Id.* at *4. We decline to follow *Sika* for the same reasons we decline to follow *VCS*.

ANDREW S. OLDHAM, *Circuit Judge*, concurring in part.

It's not clear to me that we have subject-matter jurisdiction. Section 1332 requires complete diversity among the parties. *See* 28 U.S.C. § 1332. The citizenship of a limited liability company is determined by the citizenship of its members. *See MidCap Media Finance LLC v. Pathway Data, Inc.*, 929 F.3d 310, 314 (5th Cir. 2019). In removing this case, however, the insurance company alleged only the *residence* of the relevant member, not his *citizenship*. "Citizenship and residence, as often declared by this court, are not synonymous terms." *Robertson v. Cease*, 97 U.S. 646, 648 (1878). That's because "[c]itizenship requires not only 'residence in fact' but also 'the purpose to make the place of residence one's home.'" *MidCap*, 929 F.3d at 313 (quoting *Texas v. Florida*, 306 U.S. 398, 424 (1939)).

I realize this distinction might seem pedantic. But the Supreme Court says it's important. The party invoking federal jurisdiction (here the insurance company) has the burden of establishing it. *See McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 188–89 (1936). And "every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it." *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986) (quotation omitted). And a recently proposed amendment to Federal Rule of Civil Procedure 7.1 will require the removing party to "name—and identify the citizenship of—every individual or entity whose citizenship is attributed to that party . . . ." FED. R. CIV. P. 7.1(a)(2) (effective December 1, 2022). The Committee Note to this proposed amendment singles out the "familiar example [of] a limited liability company, which takes on the citizenship of each of its owners." I'd put the insurance company to its proof.

If we have jurisdiction, as the majority holds, then I would agree that we should affirm without regard to *Cajun Conti LLC v. Certain Underwriters at Lloyd's, London et al.*, No. 21-0343, 2022 WL 2154863 (La. App. 4th Cir. June 15, 2022).