# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 30, 2023

Lyle W. Cayce
Clerk

No. 22-30142

PHI GROUP, INCORPORATED,

*Plaintiff—Appellant*,

*versus*

ZURICH AMERICAN INSURANCE COMPANY,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:21-CV-883

Before JONES, SMITH, and GRAVES, *Circuit Judges*.

JERRY E. SMITH, *Circuit Judge*:

PHI Group, Inc. ("PHI"), offers helicopter services for numerous global customers in the oil and gas, air medical, technical services, and healthcare industries. Zurich American Insurance Company ("Zurich") sold an "all-risk" insurance policy covering PHI. PHI sued Zurich in a civil action in diversity to recover economic losses for the partial interruption of its business during the COVID pandemic. The district court dismissed PHI's claims because its losses were not caused by a physical loss or damage to corporeal property, its claims were not novel in the post-pandemic legal environment, and this circuit has resolved comparable cases similarly. We affirm.

No. 22-30142

## I.

PHI bought an "EDGE" commercial property insurance policy from Zurich, effective February 1, 2020, to February 1, 2021.  Policy clause 1.01 provided coverage for "direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property, at an Insured Location . . . ."  (Emphasis removed.)  The policy defines "Covered Cause of Loss" as "[a]ll risks of direct physical loss of or damage from any cause unless excluded."

The policy also contained a section on time element and business interruption.  It stated that "[t]he Company will pay for the actual Time Element loss the Insured sustains . . . .  The Time Element loss must result from the necessary Suspension of the Insured's business activities at an Insured Location." (Emphasis removed.)  Under that contingent time element coverage, PHI was entitled to coverage if it sustained lost income because of "direct physical loss of or damage" at its customers' properties.

Additionally, under the "Civil or Military Authority" coverage, the policy covered losses if the suspension of the business activities was caused "by order of civil or military authority that prohibits access to the Location" and if the order resulted from the civil authority's response to "direct physical loss of or damage caused by a Covered Cause of Loss to property." (Emphasis removed.)

The policy does not contain a "virus" exclusion.  Initially, Zurich's default insurance policy contained a "contamination" exclusion, expressly precluding or limiting coverage on account of a "virus."  The Louisiana Department of Insurance ("LDOI") required Zurich to remove the limitation, and the Louisiana Endorsement deletes "virus" from the policy's contamination exclusion.[1]

---

[1] The Amendatory Endorsement for Louisiana changes the definition of contamin-

2

No. 22-30142

In spring 2020, the COVID pandemic began severely impacting all aspects of American life. Louisiana was no different, and accordingly, in March 2020, the Governor issued a series of executive orders and stay-home orders requiring the closure of many businesses to prevent the spread of COVID. PHI alleges that those orders caused direct physical loss of or damage to covered property resulting from "[t]he presence of the coronavirus and COVID-19, including but not limited to coronavirus droplets or nuclei on solid surfaces and in the air at insured property." PHI also alleges that it suffered time element and business interruption losses from the slowdown of its business. After suffering those economic losses, PHI filed a claim with Zurich on April 4, 2020, and Zurich denied coverage on August 11, 2020.

PHI sued Zurich in federal court. It sought a declaratory judgment that its claims triggered the policy's coverage provisions and that Zurich was contractually obligated to indemnify PHI for its claim of the actual loss suffered and other losses and damages caused by COVID. PHI also sought damages for breach of contract and breach of the duty of good faith and fair dealing. Zurich filed a motion to dismiss.

A magistrate judge recommended granting dismissal, noting that every coverage provision at issue in the all-risk policy required "direct physical loss of or damage" to property, which PHI failed plausibly to allege. Removing "virus" from the contamination exclusion did not change the scope of the coverage or the analysis. The district court reviewed the record

---

ation from "[a]ny condition of property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, Fungus, mold or mildew" to "[a]ny condition of property due to the actual presence of any Contaminant(s)." (Emphasis removed.) The amended definition of contaminant is "[a]ny solid, liquid, gaseous, thermal or other irritant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste (including materials to be recycled, reconditioned or reclaimed), other hazardous substances, Fungus or Spores." (Emphasis removed.)

independently and adopted the magistrate judge's findings and conclusions, granting the motion to dismiss. PHI appeals.

## II.

We review *de novo* the grant of a Federal Rule of Civil Procedure 12(b)(6) motion for failure to state a claim. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). We accept well-pleaded facts as true and view facts in the light most favorable to the plaintiff. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We limit our review to the pleadings and any attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). We also may consider "any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Here, the attachments include the insurance policy.

The parties agree that Louisiana law applies in this diversity action. *See Hyde v. Hoffmann-La Roche, Inc.*, 511 F.3d 506, 510 (5th Cir. 2007). In Louisiana, insurance policies are construed using the general rules of contract interpretation in the Louisiana Civil Code. *Cadwallader v. Allstate Ins. Co.*, 2002-1637, p. 3 (La. 6/27/03), 848 So. 2d 577, 580. "The words of a contract must be given their generally prevailing meaning" unless they have acquired a technical meaning. La. Civ. Code art. 2047. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Id.* art. 2050; *see also Hill v. Shelter Mut. Ins. Co.*, 2005-1783, pp. 3–4 (La. 7/10/06), 935 So. 2d 691, 694.

"When the words of a contract are clear and explicit and lead to no

No. 22-30142

absurd consequences, no further interpretation may be made in search of the parties' intent." Art. 2046; *see also Hill*, 935 So. 2d at 694. "In case of doubt that cannot otherwise be resolved, a provision in a contract must be interpreted against the party who furnished its text." La. Civ. Code art. 2056; *see also Hill*, 935 So. 2d at 694 (collecting cases where ambiguous contractual provisions are construed in favor of the insured).

### III.

### A.

The central issue is whether PHI sustained a "direct physical loss of or damage" to its property caused by coronavirus particles on the surfaces and materials within its facilities. PHI is not the first business in the Fifth Circuit to make that claim. Each time, we have found that the presence of coronavirus particles in a facility does not trigger coverage under analogous physical loss or damage provisions.[2] Accordingly, we agree with the district court that PHI cannot satisfy its burden of establishing that Zurich's policy covers its pandemic-related claims.

The Louisiana Supreme Court has not ruled whether the presence of coronavirus particles in facilities causes "direct physical loss or damage" to property. Thus, the rule of orderliness prescribes that we follow our analysis

---

[2] *See, e.g.*, *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252, 257–58 (5th Cir. 2022); *La. Bone & Joint Clinic, L.L.C. v. Transp. Ins. Co.*, No. 21-30300, 2022 WL 910345, at *2 (5th Cir. Mar. 29, 2022) (unpublished); *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 458 (5th Cir. 2022) (applying Texas law); *Aggie Inv.'s, L.L.C. v. Cont'l Cas. Co.*, No. 21-40382, 2022 WL 257439 (5th Cir. Jan. 26, 2022) (unpublished) (same); *Dickie Brennan & Co. v. Zurich Am. Ins. Co.*, No. 21-30776, 2022 WL 3031308, at *2 (5th Cir. Aug. 1, 2022) (unpublished). Note that there is no "pertinent" difference between Louisiana's and Texas's laws of insurance policy interpretation. *See Q Clothier*, 29 F.4th at 258 (citing *Aggreko, L.L.C. v. Chartis Specialty Ins. Co.*, 942 F.3d 682, 688 (5th Cir. 2019)).

No. 22-30142

in *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252.[3]
There, our panel made an *Erie* guess analyzing almost identical policy language and interpreted it as requiring "tangible alterations of, injuries to, and deprivations of property" for the insurance policy to be triggered. *Id.* at 257. We concluded that business closures and suspensions related to the pandemic did not trigger coverage because COVID did not cause the required tangible alteration or deprivation of covered property. *Id.* at 258–59.[4]

PHI alleges that the presence of harmful coronavirus particles on the surfaces and in the air of its insured property meets the tangibility requirement. Not so. "[P]roperty insurance coverage is triggered by some threshold concept of physical loss or damage to the covered property."[5] "The language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state—for example, the car was undamaged before the collision dented the bumper."

---

[3] The rule of orderliness means "one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court." *Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008). The rule of orderliness applies equally to diversity cases. *FDIC v. Abraham*, 137 F.3d 264, 268–69 (5th Cir. 1998). We revisit those holdings only after a "clearly contrary subsequent holding of the [state's] highest court," a series of "unanimous or near-unanimous holdings from several—preferably a majority—of [the state's] intermediate appellate courts," or a "squarely on point" statutory amendment. *Id.* at 269.

[4] PHI seeks coverage also under the time element and civil authority provisions of its policy with Zurich. Yet each provision requires "physical loss or damage." Because COVID did not cause a "tangible alteration to, injury to, or deprivation of" PHI's property, there was no coverage-triggering physical loss. *See Q Clothier*, 29 F.4th at 260.

[5] *Hartford Ins. Co. of Midwest v. Miss. Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006) (citing 10A Couch on Insurance § 148:46(3d ed. 2022)). "The requirement that the loss be 'physical,' given the ordinary definition of that term is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." *Id.*

*Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 270–71 (5th Cir. 1990). Accordingly, no panel in this circuit has found that exposure to the coronavirus meets this threshold.

So, the same result is required here despite PHI's efforts to differentiate its case from the previous cases. There is no evidence that the existence of coronavirus particles in or on surfaces in a covered facility results in physical loss or damage to property, nor is there sufficient justification for refusing to follow *Q Clothier*.

In response, PHI alleges a material difference in the insurance policies in *Q Clothier* and here. In *Q Clothier*, the policy covered "direct physical loss of or physical damage" to property, 29 F.4th at 255, while here, the policy covers "direct physical loss or damage" to property. But this court has found no ambiguity here, regardless of whether "physical" modifies only loss or both loss and damage. For example, in *Terry Black's*, the provision language was the same as in the PHI's policy. *Terry Black's*, 22 F.4th 450 at 452. In *Q Clothier*, we recognized the difference and still held that the language was similar enough to find the cases analogous. *See Q Clothier*, 29 F.4th at 258. Similarly, we find no ambiguity in the policy provision, regardless of whether physical modifies both loss and damage or just loss. PHI's arguments are unpersuasive, and *Q Clothier* remains controlling.

## B.

Additionally, PHI alleges that the contamination exclusion required by LDOI indicates that the policy must be interpreted as providing coverage for loss or damage resulting from the presence of a virus. PHI claims that the exclusion makes the policy fundamentally distinguishable from the one in *Q Clothier*. PHI avers that the endorsement's deletion of the word "virus" from the policy's contamination exclusion must mean that the policy would otherwise cover viral contamination.

Yet PHI has not established any facts that indicate that coronavirus caused direct physical loss or damage, which remains at the crux of any recovery under its insurance policy. Regardless of the contamination exclusion, PHI does not have a plausible claim for coverage. An exclusion cannot create coverage that does not exist under the plain meaning of the policy.[6]

## C.

Alternatively, PHI alleges that this court should follow *Cajun Conti LLC v. Certain Underwriters at Lloyd's, London*, 21-0343 (La. App. 4 Cir. 6/15/22), — So. 3d —, 2022 WL 2154863, *clarified on reh'g* (La. App. 4 Cir. 8/8/22), — So. 3d —, 2022 WL 2154863. There, the court found the phrase "direct physical loss of or damage to" property in an insurance policy "ambiguous and capable of more than one reasonable interpretation." *Id.* at *1–2.

Although the decision may question our circuit's *Erie* guess in *Q Clothier*, the ruling of one state intermediate court does not override our circuit's rule of orderliness. We would revisit a holding only in the wake of "unanimous or near-unanimous holdings from several—preferably a majority—of [the state's] intermediate appellate courts." *FDIC v. Abraham*, 137 F.3d 264, 268 (5th Cir. 1998). "[W]e are chary to rely on . . . the holding of one intermediate state appellate court . . . doubly so when . . . the state in question is Louisiana, where . . . decisions of its courts are secondary sources of law." *Id.* *Cajun Conti* is one decision from one intermediate court and was not unanimous. Without more, we will continue to follow our circuit's *Erie* guess.[7]

---

[6] *See Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 295 (5th Cir. 2009) ("Under Louisiana law, the insured must prove that the claim asserted is covered by his policy.").

[7] In *Dickie Brennan*, the panel acknowledged *Cajun Conti* and explained that "the

No. 22-30142

## D.

Finally, PHI asks us to certify several questions of law to the Louisiana Supreme Court. "Requests to certify questions to the highest court of a state are generally denied when the primary reason for certification is that state courts have not issued a definitive answer on the particular issue." *Free v. Abbott Lab'ys, Inc.*, 164 F.3d 270, 274 (5th Cir. 1999) (citing *Transcon. Gas Pipeline Corp. v. Transp. Ins. Co.,* 958 F.2d 622, 623 (5th Cir. 1992)). "Certification is not a panacea for resolution of those complex or difficult state law questions which have not been answered by the highest court of the state." *Id.* (quoting *Transcon. Gas Pipeline*, 958 F.2d at 623).

PHI is not the first plaintiff to ask our court to certify these very questions; we have rejected every request.[8] Because PHI has not presented any novel reasons for our court to deviate from past refusals, we deny its request.

The judgment is AFFIRMED.

---

issuance of an intermediate appellate court decision does not alter our duty to apply the rule of orderliness, so we must follow the sound reasoning of *Q Clothier*." *Dickie Brennan*, 2022 WL 3031308, at *2 n.1.

[8] *See, e.g.*, *Q Clothier*, 29 F.4th at 259 n.3 (refusing to certify); *La. Bone & Joint Clinic*, 2022 WL 910345, at *2 n.1 (same); *Dickie Brennan*, 2022 WL 3031308, at *3 (same); *Terry Black's*, 22 F.4th at 455 n.5 (same); *Aggie*, 2022 WL 257439, at *2 n.1 (same).