# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 3, 2023

Lyle W. Cayce
Clerk

No. 22-30340

———————

SOUTHERN ORTHOPAEDIC SPECIALISTS, L.L.C.,

*Plaintiff—Appellant*,

*versus*

STATE FARM FIRE & CASUALTY COMPANY,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:21-CV-861

———————————————————————

Before KING, JONES, and DUNCAN, *Circuit Judges*.

PER CURIAM:

Appellant Southern Orthopaedic Specialists, L.L.C. ("Southern Orthopaedic") sued its insurer, State Farm Fire & Casualty Company ("State Farm"), to recover business interruption losses caused by covid-related shutdowns. It also claims that State Farm negligently misrepresented the scope of the policy's coverage. The district court dismissed these claims as foreclosed by the policy and Louisiana law. We affirm.

I.

Southern Orthopaedic is a medical practice with three Louisiana locations. Its insurance policy provides that State Farm will "pay for accidental direct physical loss to th[e] Covered Property . . . caused by any loss as described under Section I – Covered Causes of Loss." The policy defines "Covered Causes of Loss" as "accidental direct physical loss to Covered Property" unless the loss is specifically excluded or limited.

A policy endorsement covers business interruption losses and related expenses. It provides coverage for Southern Orthopaedic's loss of income "due to the necessary 'suspension' of [its] 'operations' during the 'period of restoration.'" But "[t]he 'suspension' must be caused by accidental direct physical loss to property" and "[t]he loss must be caused by a Covered Cause of Loss."

Finally, the endorsement includes a "Civil Authority" provision. This covers loss of income "caused by action of civil authority that prohibits access to the described premises" when "a Covered Cause of Loss causes damage to property other than property at the described premises."

In 2020, in response to the covid pandemic, Louisiana officials issued public health orders that shuttered Southern Orthopaedic and forced it to postpone in-person treatment. As a result, Southern Orthopaedic suffered significant losses and incurred additional expenses cleaning and decontaminating its facilities.

After State Farm denied coverage under the policy, Southern Orthopaedic sued in state court to recover its business interruption losses and, in turn, State Farm removed based on diversity jurisdiction. Southern Orthopaedic later amended its complaint to add a claim for negligent misrepresentation. It alleged that the Property Insurance Association of Louisiana ("PIAL"), on behalf of its members like State Farm, covertly extended a preexisting coverage exclusion for contamination to encompass

pandemics, thus narrowing coverage without having to reduce rates. Southern Orthopaedic alleged that State Farm knew about PIAL's actions yet failed to inform its policyholders about the change in coverage.

The district court granted State Farm's motion to dismiss for failure to state a claim. It held that Southern Orthopaedic had failed to allege "accidental direct physical loss" to property, as required under the policy. It also found that coverage was independently barred by an exclusion for virus-related damages. Finally, it held that the negligent misrepresentation claim failed because it was foreclosed by the policy's plain language. Southern Orthopaedic timely appealed.

## II.

We review a dismissal for failure to state a claim *de novo*, accepting all well-pleaded facts as true and viewing them in the light most favorable to the plaintiff. *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ibid.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The interpretation of an insurance policy is a question of law that we likewise review *de novo*. *Coleman E. Adler & Sons, L.L.C. v. Axis Surplus Ins. Co.*, 49 F.4th 894, 897 (5th Cir. 2022). "Dismissal is proper if an insurance contract precludes recovery." *Ibid.* (citing *IberiaBank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339, 346 (5th Cir. 2020)).

## III.

First, we address whether the district court correctly concluded that the policy precludes recovery for Southern Orthopaedic. Applying binding Louisiana law, we agree that it does.

"In Louisiana, insurance policies are construed using the general rules of contract interpretation in the Louisiana Civil Code." *PHI Grp., Inc. v. Zurich Am. Ins. Co.*, 58 F.4th 838, 841 (5th Cir. 2023). Words and phrases are

given their ordinary and generally prevailing meaning. *Coleman E. Adler & Sons*, 49 F.4th at 897; *see also* LA. CIV. CODE art. 2047. When the meaning of the policy is plain and does not yield absurd results, courts must enforce the policy as written. *Gorman v. City of Opelousas*, 2013-1734, p. 5 (La. 7/1/14); 148 So. 3d 888, 892.

Southern Orthopaedic argues that it can recover under both the endorsement's business interruption provision and its civil authority provision. Both provisions require a "Covered Cause of Loss," which in turn requires "accidental direct physical loss" to property. Accordingly, the dispositive question is whether covid particles cause "accidental direct physical loss" to property. In its complaint, Southern Orthopaedic cited numerous scientific studies as well as an expert report to show that the covid virus attaches to surfaces and can remain there, capable of causing infection, for weeks. It thus argues that covid can cause "accidental direct physical loss" because it "physically infect[s] and damage[s] interior spaces and objects."

Our court has previously rejected arguments like Southern Orthopaedic's by venturing an "*Erie* guess" as to how the Louisiana Supreme Court would decide the question.[1] Guesswork is no longer necessary. The Louisiana Supreme Court recently addressed whether covid contamination at a restaurant caused "direct physical loss of or damage to property" as required for coverage by an insurance policy, and—confirming our court's previous intuition—the high court held that it did not. *Cajun Conti LLC v. Certain Underwriters at Lloyd's, London*, 2022-01349 (La. 3/17/23); --- So.3d ---. The court ruled that the policy's "plain meaning"

---

[1] *See Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252, 260 (5th Cir. 2022) (interpreting "physical loss of or damage to property" in an insurance policy to require "a tangible alteration to, injury to, or deprivation of property"); *accord Coleman E. Adler & Sons*, 49 F.4th at 897; *PHI Grp., Inc.*, 58 F.4th at 842.

required the "property [to] sustain a physical, meaning tangible or corporeal, loss or damage. The loss or damage must also be direct, not indirect." *Id.* at 5. While the pandemic had forced the restaurant to close its indoor dining and undergo extensive cleaning, "[c]ovid-19 did not cause damage or loss that was physical in nature. [The restaurant] never repaired, rebuilt or replaced any property that was allegedly lost or damaged." *Id.* at 1, 10 (quote at 10).

*Cajun Conti* controls.[2] The policy language here, while not word-for-word identical to the language in that case, is materially the same. If anything, the *Cajun Conti* policy was broader because it encompassed "damage" in addition to "loss." But both policies require a "physical loss" to property that is "direct." Following the Louisiana Supreme Court's holding, that requires showing that the property sustained a direct, tangible alteration.

Southern Orthopaedic's pleadings fall short of that. They do not allege that covid caused "tangible or corporeal" property damage. Nor do they allege that the presence of covid particles required physically repairing or replacing any part of Southern Orthopaedics's property. *See Coleman E. Adler & Sons*, 49 F.4th at 897 (affirming dismissal where the plaintiff "ha[d] not alleged that the coronavirus physically damaged or contaminated his property such that it needed to be repaired or replaced"). Nor do they claim that the presence of covid necessitated lasting alterations to the property. Without allegations of this nature, Southern Orthopaedic cannot meet the requirement of pleading an "accidental direct physical loss" under the

---

[2] Because *Cajun Conti* is dispositive, we need not consider the parties' dispute about whether the policy's virus exclusion clause also applies to the endorsement and therefore independently bars coverage.

policy. While we are sympathetic to the economic challenges imposed by the pandemic, we cannot alter the terms of the policy.[3]

## IV.

Southern Orthopaedic also brought a claim for negligent misrepresentation centered around the actions of PIAL, a private industry trade group which the law requires State Farm to join. *See Prop. Ins. Ass'n of La. v. Theriot*, 2009-1152, p. 1 (La. 3/16/10); 31 So. 3d 1012, 1013; La. Stat. Ann. § 22:1460. Southern Orthopaedic alleged that PIAL, acting on behalf of its members, made filings with the Louisiana Department of Insurance to "covertly alter" an existing policy exclusion for contamination in order to extend it to pandemics. State Farm allegedly knew about this but did not inform its policyholders, ultimately allowing it to shrink coverage without having to reduce its rates. Because Southern Orthopaedic relied on State Farm's omission, it claims to have suffered damages.

To establish negligent misrepresentation under Louisiana law, a plaintiff must prove "(1) a legal duty to supply correct information; (2) breach; and (3) damages resulting from justifiable reliance on the misrepresentation." *Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 624 n.38 (5th Cir. 1993). A party may breach its duty either through an affirmative misrepresentation or an omission. *Sys. Eng'g & Sec., Inc. v. Sci. & Eng'g*

---

[3] Southern Orthopaedic alleged in the alternative that it suffered direct physical loss "due to the loss and functionality of its insured physical property for its intended purpose as a direct result of governmental actions and civil orders." But *Cajun Conti* directly rejected the argument that "direct physical loss . . . encompasses the inability to use covered property." *Cajun Conti*, 2022-01349, p. 5 (La. 3/17/23); *see also Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 458 (5th Cir. 2022) (applying Texas law) ("A 'physical loss of property' cannot mean something as broad as the 'loss of use of property for its intended purpose.'").

*Ass'ns, Inc.*, 2006-0974, p. 4 (La. App. 4 Cir. 6/20/07); 962 So. 2d 1089, 1092.

Even accepting Southern Orthopaedic's pleadings as true, as we must at this stage, the district court properly dismissed this claim because Southern Orthopaedic could not have justifiably relied on State Farm's omission. "Louisiana courts have held that an insured's reliance on an insurer's alleged misrepresentation is not justifiable when the terms of the policy clearly reveal that the alleged misrepresentation was inaccurate." *Campo v. Allstate Ins. Co.*, 440 F. App'x 298, 301–02 (5th Cir. 2011) (unpublished) (citing cases). Here, the policy makes no secret of the fact that it contains a virus-related exclusion. Listed in the table of contents, the exclusion extends to "[v]irus, bacteria, or other microorganism that induces or is capable of inducing physical distress, illness or disease." An insured cannot rely on the silence of its insurer over the text of the policy. *See City Blueprint & Supply Co. v. Boggio*, 2008-1093, p. 8 (La. App. 4 Cir. 12/17/08); 3 So. 3d 62, 67 (no justifiable reliance where the policy contained "a straightforward, uncomplicated, exclusion" contrary to the alleged misrepresentation).

AFFIRMED.