# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 2, 2024

Lyle W. Cayce
Clerk

No. 22-10662

─────────────

Carl Schnell; Mary Ellen Schnell,

*Plaintiffs—Appellants*,

*versus*

State Farm Lloyds,

*Defendant—Appellee*.

─────────────────────────────────

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:21-CV-558

─────────────────────────────────

Before Dennis, Engelhardt, and Oldham, *Circuit Judges*.

James L. Dennis, *Circuit Judge*:

After a hailstorm damaged their home's tiled roof, Plaintiff-Appellants Carl and Mary Ellen Schnell filed insurance claims with their home insurer Defendant-Appellee State Farm Lloyds ("State Farm"). While State Farm accepted coverage for certain claims, it denied coverage for others, including the claim that the City of Fort Worth required the Schnells to replace their whole roof, rather than just the damaged tiles. The Schnells sued, and the district court granted summary judgment to State Farm. We VACATE in part, AFFIRM in part, and REMAND.

No. 22-10662

## I.

The Schnells owned a home in Fort Worth, Texas, which had a roof covered in concrete tiles manufactured by Monier Lifetile. On April 11, 2017, a wind and hailstorm damaged the Schnells' roof. At the time of the storm, the Schnells had a homeowner's insurance policy with State Farm.

The Schnells' insurance policy covered the typical "accidental direct physical loss" to their home. However, the Schnells' policy also covered increased repair costs due to building code enforcement under the policy's Building Ordinance or Law provision, known as "Option OL." Option OL stated in relevant part:

2. **Damaged Portions of Dwelling**.

When the dwelling covered under **COVERAGE A – DWELLING** is damaged by a Loss Insured we will pay for the increased cost to repair or rebuild the physically damaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

3. **Undamaged Portions of Damaged Dwelling**.

When the dwelling covered under **COVERAGE A – DWELLING** is damaged by a Loss Insured we will also pay for:

a. the cost to demolish and clear the site of the undamaged portions of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs; and

b. loss to the undamaged portion of the dwelling caused by enforcement of any ordinance or law if:

2

> (1) the enforcement is directly caused by the same Loss Insured;
>
> (2) the enforcement requires the demolition of portions of the same dwelling not damaged by the same Loss Insured;
>
> (3) the ordinance or law regulates the construction or repair of the dwelling, or establishes zoning or land use requirements at the described pre-mises; and
>
> (4) the ordinance or law is in force at the time of the occurrence of the same Loss Insured;
>
> . . . .
>
> c. legally required changes to the undamaged portions of any specific dwelling features, dwelling systems or dwelling components caused by the enforcement of a building, zoning or land use ordinance or law, if:
>
> > (1) the enforcement is directly caused by the same Loss Insured; and
> >
> > (2) the requirement is in effect at the time the Loss Insured occurs.
>
> We will not pay for legally required changes to specific dwelling features, dwelling systems or dwelling components that have not been physically damaged by the Loss Insured.

On September 8, 2017, the Schnells submitted a claim to State Farm for the physical damage to their home from the storm. State Farm inspected the Schnell residence on October 5, 2017. That day, State Farm estimated covered damages totaling $5,144.99. This estimate included damage to roofing components and gutters; however, State Farm denied coverage for damaged roof tiles and certain other exterior roofing components, finding this damage "was not caused by wind or hail" but instead by wear and tear or rot, which was not covered. Because the estimated covered damages fell below the Schnells' $9,879.00 deductible, State Farm issued no payment.

No. 22-10662

Unsatisfied with State Farm's estimate, the Schnells invoked appraisal, a process under the policy that allows appraisers appointed by each party, along with an umpire, to set the amount of loss, without consideration of causation or coverage. On March 3, 2020, the appraisers issued a final award estimating the total amount of loss as $165,848.66. This award consisted of $32,234.13 in "Building" damages—that is, costs to cover accidental direct physical loss to the home—and $133,614.53 in "Building Code" damages—that is, costs to cover the increased repair costs due to building code enforcement. The appraisal included "Building Code" damages because the Schnells' homeowners association rejected their application to replace only their broken tiles, instead requiring them to replace the whole roof. Specifically, the Schnells discovered that the manufacturer of their roof tiles, Monier Lifetile, had been purchased by Boral Roofing, which did not make the same tile, and the homeowners association refused to allow spot repairs with the new Boral tiles.

On April 2, 2020, State Farm sent a payment to the Schnells for $21,277.28, reflecting the $32,234.13 appraisal award for "Building" damages, less their $9,879.00 deductible. State Farm refused to pay the Building Code appraisal award, stating the application rejection by the homeowners association did not count as enforcement of an ordinance or law under Option OL since "[b]uilding codes are enacted and enforced by state and/or local governments." As part of its payment, State Farm included the statement, "Please be advised, neither participation in the appraisal process nor subsequent payment of any sum of money constitutes or should be construed as an admission of liability by State Farm. State Farm is not waiving any of the policy's coverage's [sic], limitations, exclusion, or provisions, all of which are specifically reserved."

Following State Farm's instruction that enforcement by state or local government is required to trigger Option OL coverage, the Schnells sought a

4

No. 22-10662

permit to use Boral tiles for spot repairs on their roof from the City of Fort Worth. On September 9, 2020, Fort Worth Building Code Administrator Evan Roberts informed the Schnells by e-mail of the following determination under the building code:

> Based on Jeff's email [sic] attached here is the determination we've made:
>
> If the existing concrete tiles do not interlock with the new tiles and proper water drainage cannot be achieved do you concur that they don't meet:
>
> > **R102.7.1 Additions, alterations, repairs.**
> >
> > *Additions, alterations* or repairs to any structure shall conform to the requirements for a new structure without requiring the existing structure to comply with the requirements of this code, unless otherwise stated. *Additions, alterations*, repairs and relocations shall not cause an existing structure to become unsafe or adversely affect the performance of the building.
>
> As the lack of a water channel will adversely affect the performance of the building.
>
> > **R904.2 Compatibility of materials.**
> >
> > Roof assemblies shall be made of materials that are compatible with each other and with the building or structure to which the materials are applied.
>
> Since they do not inter lock [sic] they are not compatible with each other.

As Roberts's e-mail alluded to, he relied on the following opinion of Jeff Driver, Sales Director of Boral, for the determination that the old Monier tiles did not interlock with the new Boral tiles:

> The roof tiles installed at 6512 Saucon Valley Dr., Fort Worth, TX 76132 (Carl Schnell's residence) were manufactured by Monierlifetile [sic] which was purchased by Boral. These roof

> tiles do not interlock with Boral's current product offering. Since these tiles do not interlock, there will not be a proper water channel for drainage and would void any warranty.

After receiving Roberts's determination, the Schnells withdrew their permit application.

After the Schnells informed State Farm of Roberts's decision, State Farm determined, contrary to the opinion of Boral representative Driver, that the Monier and Boral tiles would properly interlock and consequently denied payment under Option OL. State Farm informed Roberts of its findings, but, when Roberts asked for documentation on the new Boral tiles and their compatibility with the old Monier tiles, State Farm did not provide any, instead providing the phone number for the contractor it consulted on the issue. Roberts did not ever receive any documentation from State Farm or hear from them again.

After this litigation commenced, Roberts provided two declarations regarding the intent behind his September 2020 decision. In a March 18, 2022, declaration, Roberts stated it was his "intent to produce and convey a clear determination regarding the Schnells' home that their roof could not be repaired with new tiles of different dimensions from the existing tiles and specifically that the new tiles referenced in the proposed repair estimate were not compatible with the Schnells' existing tiles." He further stated the position of the City of Fort Worth—which is "accurately reflected" by his determination—"has not changed." However, in a May 17, 2022, declaration, Roberts stated differently that his "determination was conditioned upon the replacement tiles not interlocking with the original tiles on the roof," that he had "not inspected the replacement or original tiles," and he had "no opinion as to whether or not the tiles do or do not interlock." He further stated, "If the replacement tiles interlock, in accordance with the manufacture's [sic] installation instructions, with the original tiles on the

roof, the Schnells may make any spot repairs necessary without the need for a permit."

On February 25, 2021, the Schnells filed suit against State Farm in the District Court for Tarrant County, Texas. The Schnells brought claims for breach of contract; violations of chapter 541 of the Texas Insurance Code for misrepresentations and other statutory violations during the claims process; violations of chapter 542 of the Texas Insurance Code, known as the Texas Prompt Payment of Claims Act (TPPCA), for failure to timely tender payment after notice of liability; and breach of the common law duty of good faith and fair dealing. State Farm removed the case to the U.S. District Court for the Northern District of Texas on the basis of diversity jurisdiction. *See* 28 U.S.C. §§ 1332(a), 1441. State Farm moved for summary judgment on all of the Schnells' claims, which the district court granted.[1] The Schnells timely appealed.

## II.

We review a district court's grant of summary judgment *de novo*. *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). "A genuine issue of material fact exists when there is evidence sufficient for a rational trier of fact to find for the non-moving party." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 323 (5th Cir. 2002) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). When reviewing an appeal from summary

---

[1] In the same order granting summary judgment to State Farm, the district court denied the Schnells' cross motion for partial summary judgment as moot. The Schnells do not challenge this denial on appeal.

judgment, we must view the facts and evidence in the light most favorable to the nonmovants and draw all reasonable inferences in their favor. *Hanks v. Rogers*, 853 F.3d 738, 743–44 (5th Cir. 2017).

## III.

The Schnells challenge the grant of summary judgment to State Farm on each of their four claims. We address each claim in turn.

### A. Breach of Contract

The Schnells first challenge the district court's grant of summary judgment to State Farm on their breach of contract claim. Under Texas law, insurance policies are construed in accordance with the same rules as contracts generally. *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 99 F.3d 695, 700 (5th Cir. 1996) (citing *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994)). "The terms used in an insurance policy are given their ordinary and generally accepted meaning, unless the policy shows that the words were meant in a technical or different sense." *Id.* (citing *Sec. Mut. Cas. Co. v. Johnson*, 584 S.W.2d 703, 704 (Tex. 1979)). "When the terms of an insurance policy are clear and unambiguous a court may not vary those terms." *Id.* (citing *Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 181 (Tex. 1965)). "A contract . . . is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). When language in an insurance policy "is susceptible to more than one construction, it generally is construed strictly against the insurer and liberally in favor of the insured." *Bitco Gen. Ins. Corp. v. Monroe Guar. Ins. Co.*, 31 F.4th 325, 331 (5th Cir. 2022) (quoting *Gonzalez v. Mid-Continent Cas. Co.*, 969 F.3d 554, 557 (5th Cir. 2020)).

The Schnells claim that State Farm breached the insurance contract by denying Option OL coverage after Roberts determined their roof would

No. 22-10662

need to be replaced because the old Monier and new Boral tiles do not interlock. Below, the district court granted summary judgment to State Farm after finding 1) that Roberts's enforcement decision did not flatly deny the Schnells' permit for spot repairs but did so conditioned on the Schnells confirming that the old Monier and new Boral tiles do not interlock, and 2) under that understanding of Roberts's decision, the Schnells were required to present evidence that the Monier and Boral tiles do not interlock, which they failed to do. On appeal, the Schnells argue genuine issues of material fact preclude summary judgment because they have presented evidence that Roberts himself determined the tiles do not interlock and flatly denied their permit for spot repairs and, even if his determination was conditioned, they have presented evidence the tiles do not interlock.

We first address the district court's determination that Roberts's September 2020 e-mail did not flatly deny their permit for spot repairs but instead did so conditioned on the Schnells confirming that the old Monier and new Boral tiles do not interlock. Option OL requires that the roof tile replacement be "caused by the enforcement of a building, zoning, or land use ordinance or law." This language is unambiguous: To "enforce" means "[t]o give force or effect to (a law, etc.); to compel obedience to." *Enforce*, BLACK'S LAW DICTIONARY (11th ed. 2019).[2] Enforcement turns not on what the code technically says but on what building officials actually require. *St. Luke's Episcopal Health Sys. Corp. v. Factory Mut. Ins. Co.*, No. H–03–5534, 2007 WL 1217763, at *2 (S.D. Tex. Apr. 24, 2007). The undisputed evidence shows that Roberts's September 2020 e-mail was an enforcement

---

[2] Other dictionaries provide similar definitions. *See, e.g.*, *Enforce*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002 ed.) ("to put in force : to cause to take effect : give effect to esp. with vigor ‹~laws›"); *Enforce*, OXFORD ENGLISH DICTIONARY (2d ed. 1989) ("To compel the observance of (a law)").

9

decision, as he later stated in his March 18, 2022, declaration that it accurately reflects the position of the City of Fort Worth on the Schnells' roof under the building code. The question, then, is whether Roberts's enforcement decision required the Schnells to replace their entire roof.

We conclude a genuine dispute of material fact exists about what Roberts required, and the district court erred in choosing the interpretation that Roberts's decision was conditioned. In his September 2020 e-mail, Roberts stated, "since [the two types of tiles] do not inter lock [sic] they are not compatible with each other." Roberts later confirmed in his March 18, 2022, declaration that he intended his e-mail to "convey a clear determination" that "the new tiles referenced in the proposed repair estimate were not compatible with the Schnells' existing tiles." This evidence supports the interpretation that Roberts determined the Monier and Boral tiles did not interlock, were therefore incompatible under the building code, and flatly denied the Schnells' request for spot repairs. However, other evidence supports the interpretation that Roberts conditioned his decision by stating that spot repairs would violate the building code only if the Monier and Boral tiles did not interlock, which he left to the Schnells to determine. In his September 2020 e-mail, Roberts asked the Schnells, "do you concur that [the Monier and Boral tiles] don't meet." Furthermore, in a declaration on May 17, 2022, Roberts backtracked from his March 18, 2022, statement noted above, stating that his "determination was conditioned upon the replacement tiles not interlocking with the original tiles on the roof," that he had "not inspected the replacement or original tiles," and he had "no opinion as to whether or not the tiles do or do not interlock." This conflicting evidence creates a genuine dispute of material fact, and the district court erred in choosing one interpretation of Roberts's decision over the other. *See Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (stating courts may not

evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes on summary judgment).

We next address the district court's requirement that the Schnells present evidence that the Monier and Boral tiles do not interlock. As stated, the import of enforcement is what building officials actually require. *See St. Luke's*, 2007 WL 1217763, at *2. If Roberts determined the Monier and Boral tiles were incompatible under the building code and flatly denied the Schnells' request for spot repairs, the Schnells were not required to prove whether the tiles actually interlocked, as Roberts already determined they did not. The policy requires only a code enforcement decision mandating increased repairs or changes; the Schnells need not defend the validity of the City's enforcement decision. However, if Roberts's denial was conditioned on the Schnells confirming the tiles do not interlock, the Schnells would have to present such evidence to show Roberts required a full roof replacement.

Even assuming Roberts's determination was conditioned, the Schnells have produced evidence that the Monier and Boral tiles do not interlock. Roberts stated his concern was whether "the replacement tiles interlock, in accordance with the manufacture's [sic] installation instructions, with the original tiles on the roof." The Schnells have provided the statement by Driver, the Boral Sales Director, that the old Monier tiles and new Boral tiles do not interlock. While State Farm has presented several witnesses who have stated the tiles do interlock, the manufacturer, whom Roberts credited, stated they do not. This dispute of fact precludes summary judgment. *See Guzman*, 18 F.4th at 160.

State Farm also suggests we may affirm summary judgment on an alternative ground not addressed by the district court. State Farm argues that the Schnells' roof tiles were damaged by wear and tear or rot, not a covered risk like wind or hail, and that the Schnells, therefore, cannot show their

home was "damaged by a Loss Insured" as required by Option OL. Because the district court did not address this argument, we decline to do so in the first instance on appeal. *See Magnolia Island Plantation, L.L.C. v. Whittington*, 29 F.4th 246, 252 (5th Cir. 2022).

## B. Texas Prompt Payment of Claims Act

The Schnells next challenge the district court's grant of summary judgment to State Farm on their TPPCA claims. The TPPCA provides, in relevant part, that when "an insurer that is liable for a claim under an insurance policy," Tex. Ins. Code § 542.060, "after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delays payment of the claim . . . for more than 60 days," *id.* § 542.058, "the insurer is liable to pay the holder of the policy or the beneficiary making the claim under the policy, in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable and necessary attorney's fees," *id.* § 542.060. A plaintiff seeking TPPCA damages "must establish: (1) the amount for which [the insurer] is contractually liable under the insurance policy; (2) that [the insurer] failed to comply with statutory deadlines; and (3) statutory damages based on the amount contractually owed less the amounts paid within the statutory deadline." *Hinojos v. State Farm Lloyds*, 619 S.W.3d 651, 658–59 (Tex. 2021) (footnote omitted). "[A]n insurer's acceptance and partial payment of the claim within the statutory deadline does not preclude liability for interest on amounts owed but unpaid when the statutory deadline expires." *Id.* at 658. "Although the statute says nothing about reasonableness, a reasonable payment should roughly correspond to the amount owed on the claim. When it does not, a partial payment mitigates the damage resulting from a Chapter 542 violation. Interest accrues only on the unpaid portion of a claim." *Id.*

No. 22-10662

The Schnells argue State Farm violated the TPPCA in two ways. First, the Schnells argue State Farm has delayed payment of damages under Option OL past the statutory deadline. The district court granted summary judgment to State Farm on this claim, reasoning that because it had already granted summary judgment to State Farm on the Option OL breach of contract claim, State Farm would not be liable for any further payment beyond the statutory deadline. However, because, as explained above, genuine issues of material of fact preclude summary judgment on the Schnells' Option OL breach of contract claim, summary judgment was also improper on their Option OL TPPCA claim.

The Schnells next argue State Farm violated the TPPCA in its late payment of damages for accidental direct physical loss to the home. They argue that State Farm became "liable" under the TPPCA for the accidental direct physical loss to the home when State Farm accepted partial coverage on October 5, 2017, with its initial $5,144.99 estimate. The Schnells argue State Farm violated the TPPCA because it waited until April 2, 2020—past the statutory deadline—to increase its payment for accidental damage to the home to $21,277.28, when it paid the "Building" damages appraisal award. The district court acknowledged this separate TPPCA argument but granted summary judgment to State Farm without further explanation. On appeal, State Farm argues that, under Texas law and by the terms of its April 2, 2020, payment of the "Building" damages appraisal award, payment of an appraisal award is not a determination of "liability" under the TPPCA when an insurer initially denies coverage but later pays an appraisal award. State Farm argues that because it denied coverage for the replacement of the Schnells' roof tiles and payment of the appraisal award cannot establish liability, it was never liable for payment so as to trigger the TPPCA's statutory deadline.

An insurer does not become "liable" for purposes of the TPPCA "until it (1) has completed its investigation, evaluated the claim, and come to

a determination to accept and pay the claim or some part of it; or (2) [has] been adjudicated liable by a court or arbitration panel." *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 819 (Tex. 2019). Because appraisal is a process to determine the value of damages without determining coverage, "payment in accordance with an appraisal is neither an acknowledgment of liability nor a determination of liability under the policy for purposes of TPPCA damages." *Id.* at 820. Thus, when an insurer "initially rejected a claim" but later "paid the claimant an appraisal award," the insurer was not "liable" under the TPPCA solely due to the payment of the appraisal award. *Hinojos*, 619 S.W.3d at 655 (citing *Barbara*, 589 S.W.3d 806). On the other hand, because appraisal "has no bearing on any deadlines" under the TPPCA, "[n]othing in the TPPCA would excuse an insurer from liability for TPPCA damages if it was liable under the terms of the policy but delayed payment beyond the applicable statutory deadline, regardless of use of the appraisal process." *Barbara*, 589 S.W.3d at 818–19. Thus, when an insurer initially "accepted the claim," establishing liability; then "appraisers eventually determined that [the insurer] owed more on the claim than it had paid"; and the insurer "paid the appraisal amount" past the TPPCA deadline, "the later payment of the appraisal award did not bar Chapter 542 liability." *Hinojos*, 619 S.W.3d at 656 (citing *Alvarez v. State Farm Lloyds*, 601 S.W.3d 781, 783 (Tex. 2020) (per curiam)); *see also Randel v. Travelers Lloyds of Tex. Ins. Co.*, 9 F.4th 264, 268–69 (5th Cir. 2021) (analyzing the "substantial gap of roughly $185,000 between the preappraisal dwelling and personal property payments and the appraisal award" for purposes of the TPPCA).

Here, State Farm confuses the scenario in which an insurer denies coverage but later pays an appraisal award without admitting liability—in which there would be no TPPCA violation—with the scenario in which an insurer admits coverage, thus establishing liability, and later increases its

No. 22-10662

payment pursuant to an appraisal award—in which there would be a TPPCA violation. *See Hinojos*, 619 S.W.3d at 655–56.

In the present case, State Farm accepted coverage for damage to certain roofing components and gutters in its October 5, 2017, estimate. By accepting coverage for certain roofing component and gutter damage, State Farm admitted liability for that damage for purposes of the TPPCA. *See Barbara*, 589 S.W.3d at 819. State Farm later paid $21,277.28 pursuant to the "Building" damages appraisal award on April 2, 2020, and the itemized estimate from the appraisal umpire shows updated costs for roofing component and gutter repairs. The Schnells, therefore, have presented evidence that payment of the "Building" damages appraisal award was a delayed payment for that damage for which State Farm had already admitted liability in 2017, and summary judgment for State Farm on those claims was improper. *See Hinojos*, 619 S.W.3d at 656; *Alvarez*, 601 S.W.3d at 783; *Randel*, 9 F.4th at 268–69.

However, State Farm has consistently denied coverage since 2017 for other damage, such as broken roof tiles and certain other exterior roofing components, which State Farm maintains were damaged by wear and tear or rot, not a covered risk like wind or hail. As to this damage, State Farm has not admitted liability. Because there has not yet been a determination of liability as to this damage, it is a fact issue whether payment of the "Building" damages appraisal award was a late payment under the TPPCA as to this damage. *See Barbara*, 589 S.W.3d at 819. Although State Farm again argues it is not liable for the damage to the roof tiles because it believes they were not damaged by a covered risk like wind or hail, as stated above, the district court did not address this argument, and we will not address it in the first instance. *See Magnolia Island Plantation*, 29 F.4th at 252.

No. 22-10662

## C. Chapter 541 of the Texas Insurance Code and the Common Law Duty of Good Faith and Fair Dealing

Finally, the Schnells challenge the district court's grant of summary judgment to State Farm on their claims that State Farm violated chapter 541 of the Texas Insurance Code by making misrepresentations during the claims process and breached its common law duty of good faith and fair dealing. In the short paragraphs the Schnells dedicate to these issues in their brief on appeal, they cite no legal authority or evidence in the record.

A party may forfeit an argument through inadequate briefing in several ways, such as by failing to "offer any . . . citation to authority" or by failing to "offer record citations." *Rollins v. Home Depot USA*, 8 F.4th 393, 397 & n.1 (5th Cir. 2021) (first quoting *JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016); and then quoting *United States v. Rojas*, 812 F.3d 382, 407 n.15 (5th Cir. 2016)); *see also United States v. Upton*, 91 F.3d 677, 684 n.10 (5th Cir. 1996) (same). Further, parties on appeal may not incorporate by reference arguments made in filings before the district court. *See Morris v. Livingston*, 739 F.3d 740, 752 (5th Cir. 2014) (citing *Sylvester v. Cain*, 311 F. Appx. 733, 735 (5th Cir. 2009) (per curiam) (unpublished)). Because the Schnells have failed to cite to any legal authority or record evidence in their brief on appeal as to their chapter 541 and good faith and fair dealing claims, they have forfeited their challenge to the district court's grant of summary judgment to State Farm on these claims. Although the Schnells state they presented evidence to the district court below, they do not cite to or even name any such evidence in their brief before us, and they may not incorporate by reference on appeal the arguments they raised below.

16

No. 22-10662

## IV.

We VACATE the district court's summary judgment in favor of State Farm as to the Schnells' breach of contract and TPPCA claims, AFFIRM the remainder of the district court's judgment, and REMAND for further proceedings consistent with this opinion.