# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 27, 2024

Lyle W. Cayce
Clerk

————————

No. 23-40395

————————

Baylor Scott & White Holdings,

*Plaintiff—Appellant*,

*versus*

Factory Mutual Insurance Company,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:22-CV-120

———————————————————————

Before Elrod, Duncan, and Ramirez, *Circuit Judges*.
Irma Carrillo Ramirez, *Circuit Judge*:

In this insurance-coverage dispute, the parties disagree whether the policy covers business-interruption losses allegedly caused by COVID-19. The district court dismissed the complaint for failure to state a claim. We AFFIRM.

I

A

Appellant Baylor Scott & White Holdings (BSW) is the largest nonprofit health system in Texas. It purchased a "specialized commercial

property insurance policy" (the Policy) from Appellee Factory Mutual Insurance Co. (FM) "to cover its facilities for the period from November 1, 2019 to November 1, 2020." Under the "all risk" Policy, "recovery is allowed for fortuitous losses" within the coverage terms "unless the loss is excluded by a specific policy provision." 10A Couch on Insurance § 148:50 (3d ed.).

The Policy covers two general types of claims—"Property Damage" and "Time Element" claims. *See Bexar Cnty. Hosp. Dist. v. Factory Mut. Ins. Co.*, 475 F.3d 274, 275 (5th Cir. 2007) (explaining that time-element loss is synonymous with "business interruption" loss). Except for certain exclusions, the Policy covers these types of claims if there is "physical loss or damage."[1]

The Policy excludes coverage for the following, "unless directly resulting from other physical damage not excluded by th[e] Policy":

> contamination, and any cost due to contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If contamination due only to the actual not suspected presence of contaminant(s) directly results from other physical damage not excluded by this Policy, then only physical damage caused by such contamination may be insured.

The Policy defines "contamination" as "any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew." The Policy additionally excludes coverage for "loss of

---

[1] The Policy does not define "physical loss or damage."

market or loss of use." There are also exclusions applicable only to the Time Element coverage in addition to the Policy's general exclusions.

The Policy contains "Additional Coverages," two of which are relevant here—the Communicable Disease Response Extension and the Interruption by Communicable Disease Extension. The Communicable Disease Response Extension "covers the reasonable and necessary costs incurred by [BSW] . . . with the actual not suspected presence of communicable disease" for (1) "cleanup, removal and disposal of the actual not suspected presence of communicable diseases from insured property," and (2) "actual costs of fees payable to public relations services or actual costs of using [BSW]'s employees for reputation management resulting from the actual not suspected presence of communicable diseases on insured property." The Policy defines a "communicable disease" as a "disease which is . . . transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges." The Interruption by Communicable Disease Extension "covers the Actual Loss Sustained and EXTRA EXPENSE incurred by [BSW] . . . with the actual not suspected presence of communicable disease." The parties agree that "physical loss or damage" is not required to trigger coverage under either Additional Coverage. These Additional Coverages are also subject to the Policy's exclusions.

The Policy caps the "annual aggregate" to which BSW may be entitled under either or both of these Additional Coverages at $5 million. In other words, these Additional Coverages have a combined annual aggregate limit of $5 million. The parties agree that this limit has been paid out in full for the implicated policy year.

B

On or about June 16, 2021, BSW submitted a claim under the Policy "for [BSW's] business interruption losses as a result of COVID-19 totaling over $192 million." BSW's claim was predicated "on the physical loss and/or physical damage to property caused by, among other things, the presence of COVID-19" at BSW's facilities. FM denied the claim on July 16, 2021, stating that "the only coverage under the Policy for losses arising from COVID-19" came from the Communicable Disease Response Extension and the Interruption by Communicable Disease Extension, which had already been "exhausted." BSW initially sued FM on February 23, 2022, and it amended its complaint on March 4, 2022.

On May 3, 2022, FM moved to dismiss the amended complaint for failure to state a claim. It argued, among other things, that (i) BSW had suffered no "physical loss or damage" under the Policy as a result of COVID-19; (ii) the Contamination Exclusion and Loss of Use Exclusion barred coverage under the Policy; and (iii) only the Communicable Disease Response Extension and the Interruption by Communicable Disease Extension provided coverage for BSW's submitted claim.

On March 31, 2023, the district court granted FM's motion to dismiss. *See Baylor Scott & White Holdings v. Factory Mut. Ins. Co.*, 667 F. Supp. 3d 368 (E.D. Tex. 2023). It found that (i) given existing circuit precedent, BSW had not plausibly alleged "physical loss or damage" under the Policy, and (ii) the Contamination Exclusion and Loss of Use Exclusion barred BSW's recovery under the Policy. The district court denied BSW's motion to alter or amend the judgment on May 30, 2023. BSW appealed the district court's dismissal order on June 28, 2023.

II

An order dismissing a case for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is reviewed *de novo. Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 254 (5th Cir. 2011). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Well-pleaded facts are taken as true, while "conclusory allegations, unwarranted factual inferences, [and] legal conclusions" are not. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). Further, we view facts "in the light most favorable to" plaintiffs. *Espinal v. City of Houston*, 96 F.4th 741, 745 (5th Cir. 2024). A complaint ultimately withstands 12(b)(6) scrutiny "if it '[contains] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 415 (5th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). At this stage, the scope of our review is cabined to (1) the complaint, (2) any documents attached to the complaint, and (3) any documents attached to the motion to dismiss that are central to the claims and referenced in the complaint. *Weyerhaeuser Co. v. Burlington Ins. Co.*, 74 F.4th 275, 282 (5th Cir. 2023).

"In Texas, insurance policies are controlled by the rules of construction that are applicable to contracts generally."[2] *Cicciarella v. Amica Mut. Ins. Co.*, 66 F.3d 764, 767–68 (5th Cir. 1995). Policy language takes its

---

[2] Because the parties "raise no choice-of-law issues" and cite "Texas law (or Fifth Circuit cases interpreting Texas law) as the controlling substantive law," we apply Texas law. *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 n.11 (5th Cir. 2007); *see Erie R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938). When interpreting Texas law, we endeavor to resolve the issues presented as the Supreme Court of Texas would. *Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 764 (5th Cir. 2019).

"ordinary meaning, informed by context," *Dillon Gage Inc. of Dall. v. Certain Underwriters at Lloyds*, 636 S.W.3d 640, 643 (Tex. 2021), and "[a]ll parts of [a] policy are read together . . . [to] 'avoid making any provision within the policy inoperative,'" *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 455 (5th Cir. 2022) (quoting *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010)). If the parties interpret a policy in reasonable but different ways, Texas law requires the policy to be construed "strictly against the insurer and liberally in favor of the insured." *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987). This rule does not apply if the policy language is "clear and unambiguous." *FDIC v. Firemen's Ins. Co. of Newark*, 109 F.3d 1084, 1087 (5th Cir. 1997) (per curiam) (applying Texas law).

## III

We have previously held, in the context of COVID-19 commercial-insurance coverage disputes, that "[w]hile COVID-19 has wrought great physical harm to people, it does not physically damage property within the plain meaning of 'physical.'" *Ferrer & Poirot, GP v. Cincinnati Ins. Co.*, 36 F.4th 656, 658 (5th Cir. 2022) (per curiam); *PS Bus. Mgmt., L.L.C. v. Fireman's Fund Ins. Co.*, No. 21-30723, 2022 WL 2462065, at *3 (5th Cir. July 6, 2022) (per curiam) ("COVID-19 is 'a virus that injures people, not property.'" (quoting *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 403 (6th Cir. 2021))); *see, e.g.*, *S. Orthopaedic Specialists, L.L.C. v. State Farm Fire & Cas. Co.*, 64 F.4th 657 (5th Cir. 2023) (per curiam);[3] *PHI Grp.*, 58 F.4th at 838; *Coleman E. Adler & Sons, L.L.C. v. Axis Surplus Ins. Co.*, 49 F.4th 894 (5th Cir. 2022); *Q Clothier New Orleans, L.L.C. v. Twin*

---

[3] No "'pertinent' difference" exists "between Louisiana's and Texas's laws of insurance policy interpretation." *PHI Grp., Inc. v. Zurich Am. Ins. Co.*, 58 F.4th 838, 842 n.2 (5th Cir. 2023) (citation omitted).

No. 23-40395

*City Fire Ins. Co.*, 29 F.4th 252 (5th Cir. 2022); *Terry Black's*, 22 F.4th at 456. Sister circuits which have considered this issue unanimously agree. *E.g.*, *Olmsted Med. Ctr. v. Cont'l Cas. Co.*, 65 F.4th 1005, 1010 (8th Cir. 2023) ("[A]lthough SARS-CoV-2 may have a 'physical' element, it does not have a physical effect on real or personal property." (citation omitted)); *see Cinemark Holdings, Inc. v. Factory Mut. Ins. Co.*, No. 4:21-CV-11, 2023 WL 2588548, at *7 & n.7 (E.D. Tex. Mar. 21, 2023) (collecting cases); *see also Lawrence Gen. Hosp. v. Cont'l Cas. Co.*, 90 F.4th 593, 603 (1st Cir. 2024) (describing this conclusion of law as "the clear consensus of courts throughout the country").

Nevertheless, BSW contends the district court erred in dismissing its complaint given (i) the Policy's "unique language," and (ii) the "great scientific detail" BSW alleged explaining how COVID-19 "physically altered the surfaces of its property."

A

BSW characterizes the Policy's language as unique because it "covers 'physical loss or damage' caused by communicable disease," which makes the coverage "broader than a typical policy." But as stated, we have held that COVID-19 does not physically harm property.[4] *E.g.*, *Ferrer*, 36 F.4th at 658. BSW does not adequately distinguish our precedent. *See Neary v. CRG*

_____

[4] The parties debate whether "physical loss or damage" means (i) "physical loss" and "damage"; or (ii) "physical loss" and "physical damage." The Supreme Court of Texas has addressed this general interpretive question. *See, e.g.*, *Iliff v. Iliff*, 339 S.W.3d 74, 80 (Tex. 2011) ("Looking to the grammatical structure of the statute, the adjective 'intentional' proceeds the phrase 'unemployment or underemployment' and thus modifies that *phrase*." (emphasis added)); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 147 (2012) ("[W]hen there is a straightforward, parallel construction that involves all nouns . . . in a series, a prepositive . . . modifier normally applies to the entire series."). Accordingly, "physical" modifies both "loss" and "damage."

*Partners Grp., L.L.C. (In re Pilgrim's Pride Corp.)*, 690 F.3d 650, 663 (5th Cir. 2012) (explaining that the rule of orderliness prevents "a panel of three judges" from "unilaterally overrul[ing] or disregard[ing] the precedent that has been established by our previous decisions"); *see also Coleman*, 49 F.4th at 898 ("Our court's rule of orderliness applies to *Erie* cases no less than cases interpreting federal law."). The alleged uniqueness of the Policy's language does not change that we have determined, as a matter of law, COVID-19 does not cause physical loss or damage to property.[5] Absent a decision to the contrary by the Supreme Court of Texas or our *en banc* court, existing circuit precedent controls. *See Martinelli v. Hearst Newspapers, L.L.C.*, 65 F.4th 231, 234 (5th Cir. 2023).

B

BSW also contends that its complaint was wrongly dismissed because "[n]o other case" previously before us "included specific factual allegations of demonstratable, measurable, and tangible alteration of property" caused by COVID-19. The rule of orderliness still forecloses this contention. *See supra* Section III.A. We have already determined—as a matter of law—that COVID-19 does not affect property in a "physical" way. *Ferrer*, 36 F.4th at 658.[6]

_____

[5] Furthermore, it is unclear how the alleged uniqueness of the Policy's language helps BSW. The question at issue is not whether a communicable disease that causes "physical loss or damage" triggers coverage under the Policy, but rather whether *COVID-19* causes such "physical loss or damage."

[6] We need not address the other issues raised on appeal because COVID-19 does not trigger the coverage under the Policy on which BSW bases its claims. *See, e.g.*, *S & H Riggers & Erectors, Inc. v. Occupational Safety & Health Rev. Comm'n*, 672 F.2d 426, 428 n.4 (5th Cir. Unit B 1982).

No. 23-40395

IV

For these reasons, we AFFIRM the decision of the district court.

JENNIFER WALKER ELROD, *Circuit Judge*, dissenting:

Under Texas law, physical loss to insured property requires a "tangible alteration or deprivation of [the insured's] property." *Ferrer & Poirot, GP v. Cincinnati Ins. Co.*, 36 F.4th 656, 659 (5th Cir. 2022) (quoting *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 456 (5th Cir. 2022)); *see also U.S. Metals, Inc. v. Liberty Mut. Grp., Inc.*, 490 S.W.3d 20, 25 (Tex. 2015) ("To give 'physical' its plain meaning, a covered injury must be one that is tangible."). Thus, the legal question before the court is whether Appellant has adequately pleaded a tangible alteration to or depravation of its property.

To adequately plead a claim, "[a] plaintiff's complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Stratta v. Roe*, 961 F.3d 340, 349 (5th Cir. 2020) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Appellant has pleaded that COVID-19 "physically altered the surfaces of its property . . . by transforming its physical properties and making it, *inter alia*, measurably more hydrophobic and rougher," I believe that it has satisfied the pleading requirement.

While we have previously stated that COVID-19 "does not physically damage property within the plain meaning of 'physical,'" *Ferrer*, 36 F.4th at 660, this case illustrates why such a sweeping statement should not be understood as a legal rule, but rather as an explanation of why the mine-run COVID-19 insurance policy case fails. Indeed, although the majority opinion is correct to point out that this court and our sister circuits have held that COVID-19 has not caused physical harm to property in past cases, this case

is distinct because Appellant pleaded tangible alterations to the property, instead of merely alleging "physical harm" in a conclusory manner.

In *Ferrer*, a law firm made general allegations that the "'physical' properties of the COVID-19 virus, the 'physical' symptoms or effects/harm of the virus, the 'physical' spread or transmission of the virus, 'physical' ways and means to prevent the spread of the virus and the 'physical' harm, loss and/or loss of use . . . to the subject property(ies)/buildings" resulted in expenses to the Plaintiffs.  But the law firm did not describe any tangible harm to the property in its pleadings.  In other words, its allegations of physical harm were conclusory.  They were not linked to Texas's legal definition of physical harm.

Similarly, in *Terry Black's Barbecue*, a restaurant made general claims that it suffered "direct physical loss" when the government suspended dine-in services due to COVID-19.  *Terry Black's Barbecue*, 22 F.4th at 455–56.  However, the restaurant did not allege any tangible alterations to the property itself.  In the face of such general pleadings, which were devoid of evidence to the contrary, we seemingly turned to common sense, holding that COVID-19 does not alter property.

This case is different.  Here, Appellant's pleadings allege precisely how COVID-19 has tangibly altered the physical condition of its property.  Specifically, Appellant alleges that the "spike proteins" on the outside of the COVID-19 virus attach to metallic surfaces, such as stainless steel, and bond with oxygen-containing surfaces such as wood, cotton, or glass to physically alter the roughness of those surfaces and to make the surfaces more likely to repel water.  The Amended Complaint cites to research from peer-reviewed scientific journals such as *Nature* and *Virology Journal* in support of this allegation.  Appellant further alleges that the physical alterations to the property caused harm because the "mere cleaning and disinfecting of the

surfaces of the property could not repair or remediate the physical and tangible alteration to [the] property," and therefore it had to "incorporate extensive engineering and administrative measures to aid in the containment, remediation, and treatment of the physical loss and damage caused by COVID-19." Again, the Amended Complaint provides citation to scientific research to support Appellant's allegations. Thus, we cannot say that COVID-19 cannot physically harm property as a matter of law. If COVID-19 can tangibly alter property—which is a factual question—it may be able to cause physical harm as a matter of law, as has been pleaded here with particularity. *See Los Angeles Lakers, Inc v. Fed. Ins. Co.*, 637 F. Supp. 3d 801, 805 (C.D. Cal. 2022) (holding that whether property was physically altered by COVID-19 presented an issue of fact).

For the purposes of a 12(b)(6) analysis, we must take Appellant's detailed and specific allegations that COVID-19 did tangibly alter its property as true. Whether the virus actually altered Appellant's property is a question that requires scientific, factual inquiries, and this case should proceed past the 12(b)(6) stage for those inquiries to be made. *See Baylor College of Medicine v. Underwriters at Lloyds Syndicates*, No. 20-53316, 295th Dist. Ct., Harris County Tex. (Aug. 31, 2022) (where a jury found that COVID-19 did cause "direct physical loss or damages to" property and awarded damages of $48.5 million).[1] I respectfully dissent.

---

[1] This case is currently on appeal in the Court of Appeals for the Fourteenth District of Texas (No. 14-22-00925-CV).