# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 5, 2026

Lyle W. Cayce
Clerk

———————

No. 25-10894

———————

Blue Compass RV, L.L.C.,

*Plaintiff—Appellant*,

*versus*

Twin City Fire Insurance Company,

*Defendant—Appellee*.

————————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:24-CV-1987

————————————————————————

Before Smith, Willett, and Ramirez, *Circuit Judges*.
Per Curiam:[*]

Blue Compass RV, LLC (Blue Compass) appeals the dismissal of its lawsuit against Twin City Fire Insurance Company (Twin City) for refusing to pay the entire amount of its loss from a payment to a fraudulent account based on an exclusion in the policy that limited the amount of coverage for fraud. We AFFIRM.

———————————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-10894

I

In February 2022, SPD Construction was in the process of building a new RV sales and service center for Blue Compass. Blue Compass regularly processed and paid the periodic progress invoices SPD Construction submitted for its work. On February 22, 2022, Blue Compass received an email purporting to be from someone with SPD Construction. The email stated that SPD Construction was changing its banking information and provided new payment instructions. Blue Compass followed those instructions and updated its account information for SPD Construction. It subsequently used the updated account information when paying a periodic progress invoice from SPD Construction for $1,251,068.34.

After discovering that the updated account information was fraudulent, Blue Compass submitted a claim under its crime insurance policy with Twin City. The policy contains different "insuring agreements" with different coverage limits. The Deception Fraud Insuring Agreement provides coverage "for loss of Money or Securities resulting from Deception Fraud" up to a $100,000 liability limit and is subject to a $25,000 retention. The Forgery or Alteration Including Credit Cards, Theft Inside the Premises, and Computer and Funds Transfer Fraud Insuring Agreements have coverage limits of $2,000,000 and are subject to $50,000 retentions. Exclusion (T)(1), which "shall not apply to the Deception Fraud Insuring Agreement," excludes coverage for "[l]oss or damage resulting directly or indirectly from Deception Fraud."

The policy defines "Deception Fraud" as:

the intentional misleading of a person to induce the Insured to part with Money or Securities by someone, other than an identified Employee, pretending to be an Employee, owner of the Insured or one of the following business relations: (1) A Vendor; (2) A Customer; (3) A Custodian; or (4) A Messenger.

"Vendor" is defined as "a business entity that sells goods or services to the Insured." Twin City paid $100,000 to Blue Compass under the Deception Fraud Insuring Agreement and denied any additional coverage under Exclusion (T)(1).

Blue Compass sued Twin City for full coverage of its loss, asserting claims for declaratory judgment, breach of contract, violations of the Texas Prompt Payment of Claims Act, violations of the Texas Insurance Code for unfair settlement practices, and common law bad faith. Twin City moved to dismiss the amended complaint for failure to state a claim and attached the policy and the proof of loss to its motion. The district court agreed that under Exclusion (T)(1), Blue Compass was not entitled to coverage in excess of the $100,000 liability limit in the Deception Fraud Insuring Agreement and dismissed all claims with prejudice. Blue Compass timely appeals.

II

We review *de novo* the district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Warren v. Chesapeake Exploration, L.L.C.*, 759 F.3d 413, 415 (5th Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "At this stage, the scope of our review is cabined to (1) the complaint, (2) any documents attached to the complaint, and (3) any documents attached to the motion to dismiss that are central to the claims and referenced in the complaint." *Baylor Scott & White Holdings v. Factory Mut. Ins. Co.*, 105 F.4th 816, 819 (5th Cir. 2024).

No. 25-10894

"Interpretation of an insurance policy is a question of law that we also review *de novo*." *Coleman E. Adler & Sons, L.L.C. v. Axis Surplus Ins. Co.*, 49 F.4th 894, 897 (5th Cir. 2022). Dismissal is proper when the insurance contract, by its own terms, precludes recovery. *IberiaBank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020).

### III

Blue Compass argues that the district court erred in concluding that its loss resulted from Deception Fraud because SPD Construction was not a vendor.

Under Texas law, insurance policies are subject to the same rules of construction as all other contracts. *Schnell v. State Farm Lloyds*, 98 F.4th 150, 156 (5th Cir. 2024).[1] "The goal of contract interpretation is to ascertain the parties' true intent as expressed by the plain language they used." *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017). "The terms used in an insurance policy are given their ordinary and generally accepted meaning, unless the policy shows that the words were meant in a technical or different sense." *Schnell*, 98 F.4th at 156 (quoting *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 99 F.3d 695, 700 (5th Cir. 1996)). "To determine a term's common, ordinary meaning, we typically look first to dictionary definitions and then consider the term's usage in other authorities." *RealPage, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 21 F.4th 294, 297 (5th Cir. 2021) (quoting *Anadarko Petroleum Corp. v. Hous. Cas. Co.*, 573 S.W.3d 187, 192 (Tex. 2019)).

---

[1] Neither party disputes that Texas law governs the substantive issues in this diversity case. *See McLane Foodservice, Inc. v. Table Rock Restaurants, L.L.C.*, 736 F.3d 375, 377 (5th Cir. 2013).

4

"The insured bears the initial burden of showing that there is coverage, while the insurer bears the burden of proving the applicability of any exclusions in the policy." *John M. O'Quinn, P.C. v. Lexington Ins. Co.*, 906 F.3d 363, 367 (5th Cir. 2018) (quoting *Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998)). "If the parties interpret a policy in reasonable but different ways, Texas law requires the policy to be construed 'strictly against the insurer and liberally in favor of the insured.'" *Baylor Scott & White Holdings*, 105 F.4th at 820 (quoting *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987)). "Only where a contract is first determined to be ambiguous may the courts consider the parties' interpretation." *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 455 (5th Cir. 2022) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)). But "[w]hen an exclusion is clear and unambiguous, we interpret it according to its plain meaning, and give no deference to the insured's interpretation." *Am. Home Assur. Co. v. Cat Tech L.L.C.*, 660 F.3d 216, 220 (5th Cir. 2011).

Exclusion T(1) provides that any loss or damage resulting from Deception Fraud is excluded from coverage under the policy, except as provided by the Deception Fraud Insuring Agreement. The policy defines "Deception Fraud," in relevant part, as "the intentional misleading of a person to induce the Insured to part with Money . . . by someone . . . pretending to be . . . [a] Vendor." "Vendor" is defined as "a business entity that sells goods or services to the Insured."

Because the policy does not define "services," we apply the term's "ordinary and generally-accepted meaning." *Terry Black's Barbecue*, 22 F.4th at 455. Black's Law Dictionary defines "service" as:

> Labor performed in the interest or under the direction of others; [specifically], the performance of some useful act or series of acts for the benefit of another, [usually] for a fee

No. 25-10894

> <goods and services>. In this sense, *service* denotes an intangible commodity in the form of human effort, such as labor, skill, or advice.

*Service*, Black's Law Dictionary (12th ed. 2024). Similarly, both the Texas Supreme Court and this court have generally understood "service" to mean "performance of labor for the benefit of another." *See Sirius XM Radio, Inc. v. Hegar*, 643 S.W.3d 402, 407 (Tex. 2022) (quoting *Van Zandt v. Fort Worth Press*, 359 S.W.2d 893, 895 (Tex. 1962)); *Hodges v. Delta Airlines, Inc.*, 4 F.3d 350, 354 (5th Cir. 1993) ("'Services' generally represent a bargained-for or anticipated provision of labor from one party to another."). The "common thread throughout" these definitions of "service" is "an activity on behalf of one party by another" that "is similar in nature to work or labor." *Riverside Nat. Bank v. Lewis*, 603 S.W.2d 169, 174 (Tex. 1980); *see also City of Fort Worth v. Pridgen*, 653 S.W.3d 176, 183–84 (Tex. 2022) (explaining that courts should not "arbitrarily choose between" various dictionary definitions to find ordinary meaning but instead identify the "common thread throughout" them).

The amended complaint alleges that SPD Construction "was in the midst of building a new RV sales and service center" for Blue Compass; that Blue Compass followed its ordinary practice of paying SPD Construction's "periodic progress invoices for construction work performed;" and that Blue Compass's loss resulted when it "paid one such invoice . . . in the amount of $1,251,068.34" using the "fraudulent transfer instructions." Blue Compass alleged that SPD Construction provided labor for payment. The district court held that SPD Construction "was Blue Compass's vendor because it sold 'services' to Blue Compass under the plain and ordinary meaning of 'service'" and that "Blue Compass's loss unambiguously resulted from Deception Fraud."

Blue Compass argues that SPD Construction was not selling "services" because "service" only embraces "work whose value is in the intangible product it creates" and the value of SPD Construction's work "was in the form of a tangible object, a completed building." It contends that its interpretation is reasonable and "supported by multiple dictionary definitions of the word 'services.'" It cites Merriam–Webster's Collegiate Dictionary, which defines "service" as "useful labor that does not produce a tangible commodity." *Service*, Merriam–Webster's Collegiate Dictionary 1137 (11th ed. 2003). Blue Compass also points to the second sentence from Black's Law Dictionary's definition of service: "In this sense, *service* denotes an intangible commodity in the form of human effort, such as labor, skill, or advice." *Service*, Black's Law Dictionary (12th ed. 2024).

Although these dictionary definitions support Blue Compass's interpretation of "services," that interpretation is inconsistent with the term's ordinary meaning. As explained by the Texas Supreme Court, "[i]n ordinary usage the term 'services' has a rather broad and general meaning. It includes generally any act performed for the benefit of another under some arrangement or agreement whereby such act was to have been performed." *Damuth v. Trinity Valley Cmty. Coll.*, 450 S.W.3d 903, 904 (Tex. 2014) (quoting *Van Zandt*, 359 S.W.2d at 895). Blue Compass asserts that its interpretation of services is reasonable and must be adopted, even if Twin City's interpretation is more reasonable, but "[t]his rule does not apply if the policy language is 'clear and unambiguous,'" as in this case. *Baylor Scott & White Holdings*, 105 F.4th at 820 (quoting *FDIC v. Firemen's Ins. Co. of Newark*, 109 F.3d 1084, 1087 (5th Cir. 1997) (per curiam)).

Finally, Blue Compass contends that it contracted with SPD Construction for a building, so SPD Construction was selling real property, not services. This argument was not developed before the district court and

No. 25-10894

is therefore not properly before us. *See Rollins v. Home Depot USA, Inc.*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first instance in the district court."). In its opposition to Twin City's motion to dismiss, Blue Compass generally asserted, without argument or citation to case law, that SPD Construction had sold "an improvement to real property." But "to preserve an argument for appeal, the argument (or issue) not only must have been presented in the district court, a litigant also 'must press and not merely intimate the argument during proceedings before the district court.'" *Templeton v. Jarmillo*, 28 F.4th 618, 622 (5th Cir. 2022) (quoting *FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994)).

The district court did not err in finding that Blue Compass's loss was excluded from coverage.[2]

IV

Blue Compass also argues that the proof of loss attached to Twin City's motion to dismiss could not be considered by the district court because it was "neither referenced in [its] First Amended Complaint nor central to [its] claims."

As Blue Compass acknowledges, "[t]he district court's memorandum opinion and order is silent as to whether [it] considered the proof of loss." But even if the district court considered the proof of loss, the argument is meritless. The amended complaint expressly alleges that "Blue Compass reported its Loss to Twin City" and specifically mentions Blue Compass's

---

[2] Because Blue Compass's breach of contract claim fails, the district court did not err by dismissing its remaining claims. *See State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010) ("When the issue of coverage is resolved in the insurer's favor, extra-contractual claims do not survive.").

No. 25-10894

"loss notice" and "Twin City's provisions of the Proof of Loss forms." Because the document was "central to the claims and referenced in the complaint," the district court could properly consider it. *See Baylor Scott & White Holdings*, 105 F.4th at 819.

V

The judgment of the district court is AFFIRMED.